IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


DAYDRA MARIE LOPEZ,

        Plaintiff,

vs.                                                                  Civ. No. 11-284 RHS/ACT

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 18). The Court considered the Motion, Response (Doc. 19), Reply (Doc. 20), and the supporting documentation, and grants Plaintiff's Motion. The Court remands this matter for a rehearing consistent with this Memorandum Opinion.

## CASE HISTORY

Claimant asserts she has been disabled since June 25, 2007 due to back problems, depression, suicidal ideation and migraine headaches (Administrative Record (AR 140, 163)). She filed her claim for social security disability and supplemental security income on June 25, 2007, which was denied (AR 74). On December 5, 2007, Ms. Lopez requested reconsideration, which was also denied (AR 87, 89). After denial, Ms. Lopez requested a hearing (AR 94-95). The Administrative Law Judge (ALJ) held a video hearing on June 19, 2009 (AR 30). Ms. Lopez was represented by counsel (AR 30). At the hearing, Ms. Lopez testified about additional medical conditions: asthma and obesity (AR 36, 47). At the hearing, Ms. Lopez also amended the onset date of her disability to September 18, 2008 because she continued to work part-time

from October 2007 through July 2008 (AR 34).  On December 18, 2009, the ALJ issued a written decision that Ms. Lopez was not disabled (AR 13-21).  Ms. Lopez appealed to the Social Security Administration's Appeal Council, which declined review on February 4, 2011 (AR 1).  She filed in this Court on April 4, 2011 (Doc. 1).

## ISSUES FOR REVIEW

In determining disability, the ALJ is required to apply a five-step sequential evaluation process.  20 C.F.R. § 404.1520.  This Court reviews the ALJ's decision-making process.  At the first step of the analysis, the ALJ determined that Ms. Lopez is not engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i).  (AR 15).  This finding was in claimant's favor and therefore is not disputed nor discussed here.

In the second step, the ALJ considered whether Ms. Lopez has a severe medical impairment (20 C.F.R. § 404.1521(b) and 20 C.F.R. § 416.920(b)) and found that Ms. Lopez does have the following severe impairments: back problems, depression and suicidal ideation (AR 15).

For step three, the ALJ concluded that Ms. Lopez does not have an impairment that meets or medically equals one of the listed impairments (AR 15).  This finding was not in the claimant's favor but the claimant did not dispute the finding and therefore it is not discussed here.

Prior to step four, the ALJ reviewed Ms. Lopez's residual functional capacity and determined that Ms. Lopez's functional capacity has been affected by the following: (1) the need to sit/stand one to two minutes every hour or so, (2) the need to work only two hours at a time, (3) claimant can only work around other employees with limited conversation and interaction

with supervisors and co-workers and (4) only incidental contact with the public (AR 17).  Ms. Lopez contends that the ALJ erred at this step by not considering Dr. Gzaskow's psychiatric evaluation (Doc. 18 at 5-7) and not developing the record regarding her mental impairments (Doc. 18).  The claimant further asserts that the ALJ erred in determining that she was not fully credible (AR 18).

At the fourth step, the ALJ considered whether, in light of Ms. Lopez's residual functional capacity, Ms. Lopez can still perform her past relevant work.  The ALJ determined that the claimant could not perform any past relevant work (AR 19), which was a determination in her favor and therefore it is not disputed nor discussed here.

At step five, the ALJ determined whether Ms. Lopez could perform jobs in the national economy, given her age, education, work experience, and residual functional capacity assessment.  In part based on the Vocational Expert's testimony, the ALJ concluded that there are three jobs that Ms. Lopez could perform and therefore she was not disabled (AR 20-21).  Ms. Lopez disputes this and argues that substantial evidence does not support the ALJ's decision at step five because the ALJ's questions to the Vocational Expert did not include all of the claimant's functional limitations (Doc. 18 at 7-10).

## STANDARD OF REVIEW

The Court's review of the administrative decision is both factual and legal.  The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Grogan v. Barnhart, 399 F.3d 1257, 1259 (10th Cir. 2005).  Substantial evidence is less than a

preponderance, Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989).

As for the review of the ALJ's legal decisions, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court performs an independent review ". . . of the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence." Adams ex rel. D.J.W. v. Astrue, 659 F.3d 1297, 1301 (10th Cir. 2011) (citing Krauser v. Astrue, 638 F.3d 1324, 1327 (10th Cir. 2011)). However, the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Adams, 659 F.3d at 1301.

## ANALYSIS

Ms. Lopez raises three points of error: the first two relate to the ALJ's residual functional capacity assessment and the final relates to the ALJ's determination that jobs exist that claimant can perform.

## I.
## RESIDUAL FUNCTIONAL CAPACITY (RFC)

**A.     The ALJ's Residual Functional Capacity Assessment.**

   **1. The ALJ Should State the Weight the ALJ Afforded
      to Treating Source Opinions**.

Claimant alleges that the ALJ's RFC assessment was not supported by substantial evidence (Doc. 18). The ALJ's Decision does not specify what weight he afforded the treating source opinions (AR 19). Also, the ALJ does not identify any of Claimant's treating physicians other than Dr. Lundgren (whose treatment was limited to Claimant's back pain), nor does he mention Dr. Gzaskow or Dr. Gzaskow's opinion in the Decision (AR 19). "[A]n ALJ is required

to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record." Blea v. Barnhart, 466 F.3d 903, 913 (10th Cir. 2006). Furthermore, an ALJ must articulate a legitimate reason for not affording a treating physician's opinion controlling weight. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

In his Decision the ALJ finds that "significant weight is granted to the opinions of the State Agency medical consultants who reviewed the medical evidence of record and concluded that claimant's impairments are 'not severe'" (AR 19). He concedes that he cannot give the non-examining physicians controlling weight (AR 19). The Tenth Circuit concluded that giving non-treating sources more weight than treating physicians is error.

> According to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources. In deciding how much weight to give a treating source opinion, *an ALJ must first determine whether the opinion qualifies for 'controlling weight.'* To make this determination, the ALJ: must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

Langley v. Barnhart, 373, F.3d 1116, 1119 (10th Cir. 2004) (internal quotations and citations omitted, italics added).

The case law also makes clear that the ALJ's omission regarding weight requires remand.

> Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons in [the] notice of determination or decision for the weight assigned to a treating physician's opinion. . . . the notice of determination or decision must be sufficiently

> specific to make clear to any subsequent reviewers the weight the
> adjudicator gave to the treating source's medical opinion and the
> reasons for that weight. . . . In this case, the ALJ offered no
> explanation for the weight, if any, he gave to the opinion of . . . the
> treating physician. We must remand because we cannot properly
> review the ALJ's decision without these necessary findings.

Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations and quotations omitted).

Upon remand, the ALJ is requested to clearly state what weight he attributed to the treating sources and why.

### 2. Mental Aspects of RFC.

Claimant alleges that the ALJ committed legal error when determining her mental RFC. At the RFC step, the ALJ made a finding that the Claimant has "the residual functional capacity to perform light work" in accordance with 20 C.F.R. §§ 404-1567(b) and 416.967(b) with certain exceptions (AR 17). The Claimant objected to the ALJ's finding that her "mental RFC" was only limited in the following ways: "she can recall and carry out detailed but not complex instructions . . . can attend and concentrate for two hours at a time; can be around employees through the workday, but can engage in only occasional conversation and interaction with supervisors/coworkers; and can perform jobs requiring only incidental public contact" (AR 17). She asserts that the ALJ failed "to mention or discuss, Dr. Gzaskow's opinion" who she was referred to in September 2007 by Disability Determination Services for psychiatric evaluation (Doc. 18). She further asserts that the ALJ adopted some of the mental RFC findings from non-examining physicians without explaining how their opinions are entitled to more weight than an examining consultative physician or a treating physician (Doc. 18). The Commissioner contends that Claimant's assertions lack merit for two reasons (Doc. 19). First, Dr. Gzaskow's

examination occurred over one year prior to the beginning of the adjudication period in light of the amended onset date (Doc. 19).  Second, the Commissioner contends that the examination occurred while Ms. Lopez was "still performing SGA work activities" and that the ALJ's failure to consider the exam did not prejudice Claimant (Doc 19).  SGA refers to substantial gainful activity.  The Commissioner argues that Ms. Lopez was "capable of performing medium exertional, semiskilled work despite her diagnosed mental condition" and was therefore not disabled (Doc. 19).  Ms. Lopez points out that the non-examining expert reports were prepared at or around the same time as Dr. Gzaskow's examination, and the ALJ considered only the non-examining experts' reports.

"[A] social security disability hearing is a nonadversarial proceeding, the ALJ is responsible in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."  Madrid v. Barnhart, 447 F.3d 788, 790 (10th Cir. 2006) (internal quotations omitted).  The ALJ " . . . shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability." 42 U.S.C. § 423(d)(5)(B).  An ALJ's failure to develop the record on an issue before him or her is reversible error.  Madrid, 447 F.3d at 790; Henrie v. United States Department of Health & Human Services, 13 F.3d 359 (10th Cir. 1993).

The ALJ does not identify by name which non-examining agency experts he relies on to make his findings nor does he cite to the Administrative Record to support his findings (AR 19).  The Court assumes that the non-examining "agency experts" referred to in the ALJ's decision, pertaining to mental RFC, are Dr. Elizabeth Chiang and J. Leroy Gabaldon, Ph.D, who are identified in the Administrative Record (AR 323-25; 380).

Upon review of the record, it appears that on September 24, 2007, Dr. Chiang prepared a Mental RFC Assessment (AR 323-25) which Dr. Gabaldon reviewed on February 5, 2008 when Dr. Gabaldon determined that there were "no new mental allegations" and the prior decision should be affirmed (AR 380).  The record also reflects that Dr. Chiang's report was prepared approximately two weeks after Dr. Gzaskow's report (AR 325).  Although the Commissioner argues that Dr. Gzaskow's report was prepared outside the adjudication period, the ALJ's Decision does not state that he did not consider Dr. Gzaskow's opinions or that the opinions are rejected because the report was untimely (AR 19).  If the ALJ had determined that he could not consider Dr. Gzaskow's opinion because it was not timely, he should have articulated his reasoning in the Decision.  It appears that the ALJ relied on Dr. Chiang's report prepared at the same time.  "The opinions of doctors who have not examined the claimant ordinarily do not create substantial evidence on the record as a whole."  Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).  In Nevland, the Eight Circuit concluded that the ALJ committed reversible error in failing to request an opinion from claimant's treating physicians or order a consultative examination to assess his mental RFC.  Nevland, 204 F.3d at 858.  Here, the ALJ should have requested an opinion from Claimant's treating physicians or ordered a current evaluation.

Upon remand, the ALJ is requested to (1) identify by name the treating source physicians and experts he is relying on to determine Mental RFC, (2) state what weight he is attributing to each treating source physician and expert opinion, and (3) develop the record by ordering a current evaluation and/or requesting opinions from treating source physicians for the time in question.

**B.     The ALJ's Credibility Determination.**

Claimant alleges that the ALJ's credibility findings are not supported by substantial evidence and that he "did not perform a thorough, reasoned review of all of Ms. Lopez's attempts to find pain relief" (Doc. 18).  In his decision, the ALJ did not credit Ms. Lopez's testmony.    "Credibility is the province of the ALJ." Hamilton v. Sec'y of Health & Human Servs., 961 F.2d 1495, 1499 (10th Cir. 1992).  An ALJ "is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.  As a result, the ALJ's credibility findings warrant particular deference." White v. Barnhart, 287, F.3d 903, 910 (10th Cir. 2002).   Notwithstanding this deference, an ALJ "is not entitled pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability," Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) nor can the ALJ be selective of only those portions of the administrative record that support his or her conclusion while ignoring contradictory claims.  Here, the ALJ refers only to records supporting his credibility determination and, he fails explain why certain records that do not support his position should be discounted.

The ALJ's assessment of Ms. Lopez's credibility appears to be based on her testimony that she had "no problems walking," that "her doctor said she would need oxygen indefinitely" and that "she could probably do a solitary job where she would be allowed to get up and stretch periodically" (AR 18).   The ALJ noted that the medical record dated June 6, 2009 prescribing the oxygen was for one month only and there were no limitations on her activity (AR 18, 429). Upon review of the medical record, the record specifically states that the Claimant "must be cleared by primary doctor to discontinue" the oxygen (AR 429).  There are no additional records reflecting that Claimant's prescription for oxygen was either continued or discontinued because

9

the hearing before the ALJ occurred June 19, 2009, less than two weeks after the oxygen was prescribed.  The ALJ is also correct that there were no specific activity restrictions imposed, but the medical record reflects that the Claimant was instructed to perform "activity as tolerated" (AR 429).  This medical record was a form where one of the options under "Activity Restrictions" was "NO Restrictions" which was not checked (AR 429) thus contradicting the finding of the ALJ that "there were no limits on the claimant's activities" (AR 18).

The ALJ's findings that Claimant experienced pain relief cited specific treatments documented in her medical records from Dr. Alston Lundgren (AR 18).   He further noted that there were objective findings on x-ray and MRI studies that supported his credibility determination (AR 18).  The ALJ, in determining credibility of pain testimony, should consider:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Branum v. Barnhart, 385 F.3d 1268, 1273-74 (10th Cir. 2004) (citing Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991)).  While the ALJ did identify records to support his credibility finding, there appear to exist additional records that the ALJ should have considered in making his determination.  The ALJ cites to only three discrete treatment dates in Dr. Lundgren's reports,  December 22, 2006, July 19, 2007 and January 11, 2008, which contain findings favorable to the ALJ's determination (AR 18-19).  The ALJ does not appear to consider all of the records which reflect that although Claimant receives pain relief through treatment, she had recurring pain that required additional treatment (AR 364-78).

When referring to the radiology studies, the ALJ cites to pages of the medical record that support his determination (AR 400, 402, 406) stating that the "studies were minimal," but fails to explain why he did not consider records that find "severe degenerative disk disease at L5-S1" and "moderate-to-severe degenerative disk disease at L4-L5" (AR 401).  It is not clear that he considered all of the medical evidence provided.

On remand, the ALJ should consider all of the records and if he determines that certain records or medical findings should be discounted, explain why he discounted or rejected the records or findings.

## II.
## HYPOTHETICAL QUESTIONS TO THE VOCATIONAL EXPERT (STEP FIVE)

Ms. Lopez argues that the ALJ erred because his hypothetical question to the Vocational Expert was based on a flawed residual functional capacity assessment, chiefly that the questions to the Vocational Expert also ignored Dr. Gzaskow's evaluation.  Upon remand, a decision regarding the claimant's residual functional capacity assessment will affect step five and this issue is also remanded to the Social Security Administration for further proceedings consistent with this opinion.

## III.
## CONCLUSION

The Court in reviewing the determination of the ALJ is neither to "reweigh the evidence, nor to substitute its judgment for that of the Commissioner." Grede v. Astrue, WL 4448851 *1 (10th Cir. 2011).  The Court's decision to remand is based solely on errors in the ALJ's decision making process.  The Court does not take any position with regard to whether substantial evidence supports the ALJ's overall decision that Ms. Lopez is not disabled.  The ultimate

11

determination regarding disability is within the Social Security Administration's jurisdiction upon remand.

**UPON REMAND,** the ALJ is requested to (1) identify by name each individual expert and treating source physicians, (2) state the weight the ALJ afforded to each expert and treating source opinion and explain why, (3) develop the record for determining RFC and credibility, and (4) conduct any further proceedings consistent with this opinion.

**THEREFORE**, the Motion to Reverse or Remand Administrative Agency Decision (Doc. 18) is GRANTED and this matter is REMANDED to the Social Security Administration for further proceedings consistent with the opinion expressed here.

*Robert Hayes Scott*
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE